We'll move to our seventh case this morning. Kolchinsky v. Western Dairy Transport Mr. Bykovsky Thank you, Your Honor. Eugene Bykovsky for the plaintiff's appellants, Marina Kolchinsky and Lydia Kolchinsky. May it please the Court. This case stems from an October 5, 2014, tragic automobile accident where a tractor-trailer driven by Bill Bentley collided into the rear of a vehicle operated by Marina Kolchinsky, resulting in Marina Kolchinsky being paraplegic and significant injuries to Lydia Kolchinsky. The issue before the Court is whether the District Court erred in granting summary judgment on plaintiff's theories of vicarious liability against the defendants' WD Logistics and Western Dairy. And I will submit to the Court that the Court did err, that there was material issue of fact that warranted those issues to be tried as to those defendants' liability for Bentley's negligence. The first issue that I would like to address here today is the issue of whether Western Dairy Transport and WD Logistics were operating as a joint venture. I would submit to the Court that there are material issues of fact as to that issue. Does that only matter if WD Logistics is found liable through an agency theory? Otherwise, what would be the relevance of the joint venture? Well, Your Honor, thank you for that question. I think it would not only be relevant as to the question of agency, it would also be relevant as to the plaintiff's theory of liability against those defendants under Section 428, Restatement 2. How would it be relevant to the question of liability if, let's say there's an issue of fact that they're joint ventures, but there's no agency liability? How would the joint venture be relevant? Thank you. The defendant, WD Logistics, was operating as a broker while the defendant, Western Dairy Transport, was a licensed motor carrier operating as a motor carrier during the course of its operations. If it is determined that they were operating as a joint venture, then it becomes that the joint venture was not only operating as a broker but also as a motor carrier with respect to various operations involving Bentley and Bentley Trucking. And if that's the case, then Section 428, we would submit to the court, would impose liability against the motor carrier joint venture for conduct of its contractors, whether or not they were operating as an employee under agency or as independent contractors. Because that determination is not required, we would submit to the court under Section 428, Restatement 2 of torts. So I think the question of whether or not there is a joint venture is a very relevant issue that was not, unfortunately, addressed by the court at the district level. The court, and just to restate the reasons why we believe there was a joint venture... Well, the court addressed it. The court found that it wasn't relevant. The court... If there was no agency liability. Correct. And we would submit to the court that not only is the existence of a joint venture relevant to the term of agency, it is also relevant if there is a joint venture for the application of the Section 428 library. Again, just to come back to the issue of whether or not there was material effects of the joint venture, Western Dairy Transport had significant involvement in management and operation of Bentley Trucking. Without any compensation, both WD Logistics and Western Dairy Transport are owned by the same parent company. There is clear inference that the profits from this venture were flowing up to the joint owners. And under Powell v. Dean Foods, the court can consider circumstances to show existence of a joint venture. I believe that the facts listed in the brief and presented at the trial level create significant material issue of factors to the joint venture. And that's something that the court should have addressed as part of its summary judgment determination. Moving on to... Again, if there is issue of material factors to the joint tenancy, then our argument is that there should be material issue of fact that the court should have considered as to the Section 428 claim against WD Logistics and Western Dairy together. In addition to that theory of liability that the district court did not expressly address in its decision to grant summary judgment, there's also another theory of liability that we presented at the district level, and that is the granting of agency pursuant to these bills of lading that Bentley Trucking and Bill Bentley executed on behalf of WD Logistics and Western Dairy. Now, the appellees point to Scheinman and Schramm cases to show that having an error on a bill of lading should not impact the court's decision as to whether or not there is agency rights given. I would submit to the court that those cases are distinguishable from this case. And a very simple reason is that those cases deal with a single erroneous bill of lading. In one case, there is not even the carrier listed. There is just a description of what would constitute a carrier, and that would be in the Scheinman case. Here we're dealing with a consistent pattern of authority given by both of these defendants, WD Logistics and Western Dairy, to Bentley to represent itself as them in the context of the carrier for these shipments. The trial court allowed us to request 90 days of these bills of lading prior to the date of the accident. And within those 90-day period, we were provided with 34 different bills of lading, showing consistently that it was either listed as Western Dairy transport that's the carrier, or WD Logistics as the carrier, and that these were shipments that were transported by Bentley. That consistency, I think, distinguishes this situation from the cases cited by the appellees for the proposition that these bills of lading have no relevance as to the determinant of agency. I would submit to the court that that creates an issue of material fact that should be addressed and should have been addressed by the district court and was not. Finally, moving to the factors that are stated in the Spurl case, which is the main case that the appellants relied on for finding of agency under the Illinois Common Law. We list numerous factors as to why we believe that there was control by WD Logistics and Western Dairy over Bentley to establish agency. And granted that each one of them can be addressed and may, in their individuality, may not be considered sufficient to establish control, but the court has to look at them in totality. Is there any evidence that WD controlled the manner of delivery by Bentley? It shows the route it had to take, set its hours, anything about the manner that it carried out its delivery. There is no allegation that it chose the route for Bentley to transport. No evidence of that? No. The requirements imposed by WD Logistics and Western Dairy on Bentley created a specific exact time for delivery and pickup as opposed to a window, which I think would impose more of a restriction on when the goods have to be delivered, as opposed to other cases like in Scheinman where there was a window of several hours when the delivery could be achieved. But I think I would like to point the court's attention to a couple of cases from Illinois that speak as to the level of control that I think are analogous to this situation, specifically McHale v. WD Trucking where I think the focus was, and also Hoffman v. Crane, where the focus was that this driver was exclusively hauling for WD and Western Dairy and was working the maximum hours allowed by regulation. And so they were completely reliant economically on the work provided by WD and Western Dairy, Bentley was. But they weren't required to do that, correct? They were not required, just like an employee is not required to work for an employer. We're not dealing with a situation where there's indentured servitude or, you know, in both situations, employment and in this situation, somebody can choose not to. An employee might be required to exclusively work for an employer. Correct, but the facts of this situation were that this was the, because of the number of hours worked, there was no other work that Bentley could take or was seeking to take. And because of that reliance and because of WD Logistics and Western Dairy's ability to then take away those loads, the McHale v. WD Trucking court found that that is an element of control that is relevant for determining agency. And in Hoffman v. Crane, it actually made a comparison between that ability to take away loads to the fines structure that was present in Spurl that caused the court in Spurl to find agency. The other thing that I want to point out to the court that speaks us to the level of control in this situation is the defendants argue that these were specific trips that were negotiated and agreed to by Bentley, which is tantamount to an independent contractor. In this situation, though, after Bentley delivered the milk to Minnesota, the defendants had the ability to tell him to take this empty trailer after the trip had ended and drive it all the way to Indiana. And pursuant to their contract provisions, if he would have declined, they did have the option, they may have not done so, but they did have the option to impose costs of him refusing to do that on Bentley. So Bentley took this empty trailer and drove it from Minnesota. He didn't make it to Indiana because obviously he got into the accident in Chicago. But he took that truck and drove it without any promise of compensation, without any specific agreement as to be paid. He took that truck and drove it towards Indiana when this accident happened. I think he acknowledged that he understood that if he didn't do that, he may have been exposed to costs. I think that's an indication of control that is relevant for the court's attention. I will reserve the remainder of my time. Actually, you have no time left. Your time long since has expired. If there's any other questions, I would be happy to answer them. Thank you. Thank you. Mr. Taylor. Good morning, Your Honors. May it please the court. My name is Jay Taylor. I'm here on behalf of the Appalachian Western Dairy Transport and WD Logistics. I'd like to address some of the points that counsel made in his presentation, and I think beginning kind of with at the end. There was a statement that Bentley Trucking was somehow obligated to transport this trailer or this empty tank truck from Wisconsin to Indiana. Testimony was that's not the case. Mr. Bentley testified that he did that voluntarily, chose to do it, wasn't obligated to do it, and that if he didn't transport the trailer, the company just would have found him another load. So, and I think that gets to another point about. But did the agreement provide otherwise? No. Counsel's argument was that the agreement provided otherwise. There's nothing in the agreement that would impose a fine on him as there is in the Spurl case. In that case, which is quite different than this one, there's an elaborate system of fines that enabled the broker to establish control over the way that the driver performed the work. So this case, I think we would say, is quite different than Spurl, you know, among other things. In that case, the broker imposed a strict schedule for the driver. The broker required the driver to monitor the temperature of the load during the transportation. And if the driver didn't follow those instructions, the broker had the opportunity to fine the driver. Those things just aren't present in this case. You know, and in terms of it's important to note, and I think both parties cited this proposition in their briefs, that whether there is an agency or the scope of the agency really is confined to the trip here, the trip from Wisconsin to Indiana. There's a lot of talk about sort of the course of conduct between the parties, but this isn't sort of a wage and hour case where you're talking about whether somebody's an employee for purposes of state employment laws. Whether Bentley Trucking was an agent or employee of Western Dairy Transport or WD Logistics during the trip in question. So that's important in one way because, you know, there's no bill of lading for this trip that identified anybody as the carrier or as an agent. On that point, the apparent agency claim, the apparent authority, so in connection with this trip, there was no designation of Bentley Trucking as anyone's agent. But even if there had been, under Illinois law, a principal can only be liable for negligence of an apparent agent if the plaintiff had known about the designation of the negligent party as an agent and did something to rely on that to its detriment. So really that apparent agency theory doesn't really fit here at all. Apparent agency is good for contractual arrangements. Right. Or business torts, that sort of thing. Right. There are Illinois cases that apply it in the context of hospitals, doctors working for hospitals, but it's hard to see how a motorist could rely on the designation of a motor carrier as an agent of a broker under any circumstances. So in personal injury cases, it's usually invoked in the medical malpractice context? I think that's right, Your Honor. But I think, as I understand it, the appellant agrees that there's no evidence that WD Logistics or Western Dairy exerted any actual control over the way that Bentley Trucking went about doing its job. Certainly on this trip in particular, there was no evidence that they had any control over the route that the driver took, the way that the driver did his work, any aspect of his work. Bentley Trucking was an independent, licensed motor carrier responsible for its own compliance with federal regulations and the hours of service rules. WD Logistics and Western Dairy Transport had no involvement with any of that. With respect to the Section 428 public franchise argument, that basically applies when a party is performing some kind of unreasonably dangerous work under a public franchise. That party is liable for the negligence of the contractors that it selects or engages with to perform that unreasonably dangerous work. And so it applies to motor carriers and their independent contractors, but it doesn't apply to property brokers because property brokers aren't performing the work of motor truck transportation over public highways under the public franchise. So it really doesn't apply here at all. With respect to the joint venture, the court's questions I think get at the issue here, which is whether it's relevant at all. Now the brief, the appellant's brief doesn't reference any of the elements of a joint venture. It doesn't specifically identify facts that might be questions of fact under any of those elements. But, you know, in the absence of any evidence of control, any evidence that WD Logistics or Western Dairy exerted or had the right to exert control over the operations of Bentley Trucking, it really doesn't matter and I think that's what the district court found and we would agree with that. So if the court has no further questions, we would ask that the court affirm the district court's entry of summary judgment. Thank you. All right, thank you. Mr. Bekovsky, your time had expired, so the case will be taken under advisement. Our thanks to both parties.